Oral Argument, not to exceed 15 minutes per side. Mr. Dindoffer for the appellant or petitioner. Good morning. Good morning. Police Court, Your Honor, first may I reserve three minutes for rebuttal? Yes. Thank you. Your Honor, Frederick Dindoffer here representing the appellant, excuse me, the petitioner in this case, St. Mary's Cement. It's St. Mary's position that the best available retrofit technology emissions limits that EPA has imposed on St. Mary's plant in Charlevoix, Michigan should be vacated. There are two reasons for that. First, the plant itself, if it existed today the way it was in 1977, would be subject to these BART requirements. That was created in the Clean Air Act. What's your response to the government's argument that you forfeited that argument? Your Honor, waiver is not an appropriate claim in this particular case. When a company is faced with a standard imposed upon it, it may at any time claim or show that the government did not have the authority under the Act to impose those requirements. The case law is clear on that. Well, I mean, that theory of forfeiture means you would never apply the forfeiture rule, which is in the statute. The statute says you've got a notice and comment period. If you have objections, you're supposed to raise them then, and if you don't, tough luck. I mean, that's the normal rule, right? And the D.C. Circuit has an exception for key assumptions. To my knowledge, I've never seen a case outside the D.C. Circuit applying that rule, and I assume that's because usually what's going on is the D.C. Circuit is reviewing national rulemaking, which applies to entities before it and entities not before it. And so the way to prove something's non-arbitrary is to make sure the key assumptions of the rulemaking exercise are followed. This is a little different. I mean, this is a forfeited argument about something this one plant may or may not have done decades ago, and that seems precisely the kind of thing that the forfeiture rule is designed to deal with. Well, I think, Your Honor, I appreciate the comment. And first of all, you're correct. The D.C. Circuit is where this was developed, that rule of forcing the government to use and demonstrate that any assumptions it made in setting a rule were appropriate and that it had to do that even if the comments had not been made in the comment period. What we have here is something that if you look at historically, and I did as I was thinking about it, as you said, it was decades ago what happened. I was a teenager when this plant, a plant, was first put in place on this site. And in 1977, when the act was passed, I was a young engineer. These are all records that were... I mean, the nature of the adversarial process, the premise of it is that if information, facts are in the possession of one of the parties, we expect that party to bring them forth at the time when they're supposed to be brought forth. I mean, this was not up to the state. This was not up to the national EPA. This was uniquely within the hands of your client. And, I mean, this is like the worst setting for forfeiture. You run up the flagpole of the first argument, and it's only when the EPA, the national EPA, says, I don't know, I don't think this is going to work, that your client then goes and looks into the history. I mean, that's exactly what's not supposed to happen. The notice and comment period is not... that's the first bite at the apple. If that doesn't go well, we have a reconsideration period where you can look for your really, really good arguments and try to win then. That's a really dangerous system. Well, I understand the point, Your Honor, and that certainly was not the intention of the client when this all occurred. They acquired this facility in 2005 and had no notice and no knowledge of this history. But they found it as soon as they learned they were going to lose on the first ground. How long did that take? It took months to find it, actually, Your Honor, because searching for that information was not a thing that happened in two weeks. That was the period of time that... They started looking, though, after that phone call with the national EPA, right? No, it was in, I believe, July of 2010. Was that right? Or 2012. Excuse me. Okay, so maybe I've got this... straighten me out on this chronology. The notice and comment period closes. Yes. Then there's a conversation between your client and lawyer and the national EPA, and then... I thought it was after that that the company started looking. You're saying they'd been looking before that. They'd been looking before that, Your Honor. The problem... Where is that in the record? It's not in the record, Your Honor. Okay. That would have been nice. Well, the problem, Your Honor, is one of finding records from those days. No, no, no. I'm saying it's unfortunate it's not in the record that your client had started looking. It actually started looking. I'm sorry. Yes. I understand your point, and what was available and what the company had uncovered and found was put in the record as quickly as it could be. Well, there's no prohibition on your client starting to look for the history of this plant months and months and months before, right? That's correct, Your Honor. I think the reason that that didn't occur was because the state of Michigan had, in its normal course, set up the standards that would apply to this facility, absent an EPA overriding of that. The company looked at those standards and said, okay, we're in good shape. We meet these. We're in the middle of the Great Recession. We've laid off people. We can't afford to go any farther on this. We're in good shape. Let's get on with making cement, doing our business, and trying to make money. It was just not a priority when they already satisfied the requirements. I'm sounding skeptical. I guess I am, to be honest with you, skeptical, so get rid of my skepticism by explaining to me why it's a months and months process to find out the history of the plant. That's just not obvious to me. Because in order to do that, Your Honor, we had to, first of all, again, taking a plant that was only owned by this company for a few years, we had to go to the state of Michigan and try to uncover information that it had through the Feeder Freedom of Information Act. The prior owners had information. Yes, and another possibility, and we went to the prior owners, but the prior owners said, we don't have any further information. We either discarded that or it was left with you. And so it was a process of trying to find what was there. But it was findable. Eventually, yes. So the big delay that calls it months and months is the Freedom of Information, that's the delaying thing? No, it was not. Because it's either there or it's not. Correct. And it's one plan, it's not like you're saying, we need to look at the files of all plants, it's the Charlevoix plan, not a lot of cement plants there. So you've, I'm just struggling with why it's so difficult. Now if the Michigan, state of Michigan sat on its hands in the FOIA request, I guess that would help your cause, but I don't know if that's what happened. Well, that happened to some extent, but I wouldn't lay it at their feet. I think it was a matter of, at first, the company thought the priority should be made and taken to the government, that the standards they were imposing were incorrect. During that time, we were still trying to find information and history of the plant itself and learn more of it. That was not terribly successful until later on, finally, we found some information that could be provided. I think the key thing, too, Your Honor, is that the agency had an obligation to go through this process independent of what the company had. It had a duty to say, if we're going to try to regulate this place, to make sure that it really falls within the... Federal agency. Yes. That they should have been doing what you were doing in terms of the history of the plant. Absolutely. And the state agency... What's your case for that? I'm sorry? What's your case for that? We pointed out the cases that said that when there is a basic assumption... These are the DC circuit cases? Yes, they are. I'm going to need a little more staff, I think, for that one. You just explained how hard it is. Yes. Well... It's the process that is supposed to be followed when a rulemaking is put in place, Your Honor. The... When would there be forfeitures under your theory of the DC circuit cases? Well, I think that whenever, say, an enforcement action was taken against a company because it failed to live up to such a standard, that company would be in a position where it could raise the issue that the statute did not give it authority to impose that requirement on it, even after the rule had been in place for a long time. I think those cases are clear on that. I'm asking a different question. I'm saying under your theory of what those DC circuit cases mean, because we know we have the DC circuit cases and we know we have the statute that says forfeitures. There's a forfeiture rule, right? We know we have those two things, right? Okay. So I'm just asking, under your reading of the DC circuit cases, doesn't that eliminate the forfeiture rule? I'm trying to figure out the setting in which there could still be a forfeiture, in which that statute could still have meaning, and I don't know that setting. If it applies... If your theory of the DC circuit cases applies to this case, your case, I'm trying to figure out when there would ever be a forfeiture. I guess, Your Honor, I would have to think through a number of scenarios to tell you that. I don't know the answer. You can come up with any. A million possibilities. Well, I think, Your Honor, if an enforcement action is brought, the defendant would have the chance to raise the issue. The court at that time could determine if there was any reason to say that the agency did or did not have authority to impose that requirement. I guess, in summary, our point is simple. There was a reconstruction. The reconstruction made this facility into a new source, and a new source is, under the statute, not an existing source at the time this occurred. This all happened decades ago, as we know. But, nonetheless, it still made it a new source. And this source, in fact, back in those days, met NOx standards, which is what's at issue here, that were much more stringent than those met by all of its competitors. And EPA wants more, and it's not entitled to do that in this case. Thank you. If there are other questions, I'd be happy to. Apparently not. Thank you. May it please the Court. Alan Greenberg, on behalf of Respondent, United States Environmental Protection Agency. Your Honor, this case is about St. Mary's untimely attempt to avoid the requirement to install nitrogen oxide controls on its cement plant in Charlevoix, Michigan. Major industrial facilities of the vintage of this cement plant that impact visibility have been required to install nitrogen oxide controls under either the Clean Air Act's Prevention of Significant Deterioration Program, known as PSD, or under the Regional Haze Program. Since August of 1977, a source is either new, and therefore subject to PSD, or it's an existing source, in which case it's subject to the Regional Haze Program. It's not neither. And St. Mary's wants to be neither. It wants to not have to be subject to BART or to the PSD nitrogen oxide controls. If the Court reaches the merits of this case, the Court should reject St. Mary's claim that it is neither. But the Court should not even reach that question because, as Judge Sutton pointed out, it has waived that argument because it was not timely raised during the rulemaking process. Well, so, first of all, questions aren't answers, but what's your take on this line of D.C. Circuit cases? I mean, does the government, I take it you accept that line of case? I mean, because, first of all, it's a little in tension with the forfeiture rule. I mean, the forfeiture rule just seems like an absolute rule. And then we have this idea that, well, that actually doesn't always apply if something is a key assumption. So I take it the government accepts those D.C. Circuit cases? There's two sets of D.C. Circuit cases that I addressed. The key assumptions, the key assumptions cases. Okay, the key assumption cases we generally accept, but this isn't a case that involves a key assumption, Your Honor. So how do we, yeah, explain this line. I'm really curious how you describe this line. In this particular case, the issue is, was there record evidence as to factually that this plant is subject to the regional haze program in BART? And EPA is not making assumptions. It has in the record the fact that this plant was constructed between 1962 and 1977, was in existence in 1977. The state of Michigan decided it was BART eligible. The owner of the plant did not contest that it was BART eligible. The plant owner submitted its BART plan. Your first line of way of thinking about it is there are no assumptions. They're in record, and the record is what they created, and you're allowed to rely on that record. Exactly, Your Honor. This isn't, we don't know, so we have to assume things in order to support our rulemaking. Here we have record evidence of the time, the comment period, and when the rule was issued, the record was full of evidence that the plant was constructed within the statutory window, and therefore I was asking another question about, is the, another way of thinking about key assumptions, you kind of suggested this a little bit ago, is that it's also a line between facts and law. Is that true? I wouldn't draw it as that kind of a distinction, but for example, a number of the cases cited by the cement plant in this particular case involve modeling. So EPA is having to model something, and it makes certain assumptions about what either plants or what emissions should be modeled, and in the context of modeling, the DC circuit says, well, if you're using a model, your model has to have justified assumptions, and you, EPA, have to be able to support those assumptions. Here we're not dealing with assumptions, Your Honor. We do have facts on which EPA, and in fact the state of Michigan, and in fact St. Mary's Cement up until the 99th hour, all acknowledged, established that this particular plant was BART eligible. So based on the distinction between facts and a record, as opposed to a rulemaking of national origin in which EPA has to make, or may have to make assumptions, we're not dealing with assumptions here. What about the reality that you still let them submit this, you said we'll take it seriously, and at a minimum they get to, they get review over the motion for reconsideration decision, right? I mean, I know you denied it. Correct. Certainly under the first case, the 3105 case, there's no question that there's a waiver because they didn't raise this issue during the comment period. Their only hook would be to use their petition for reconsideration to bring this before the court. Then you would say, well, we're just stuck with that standard, though. What this court reviews is whether EPA was arbitrary or capricious in denying the petition for reconsideration. And the threshold for a petition for reconsideration is that the new information, it was impracticable to present that during the rulemaking period. And it was not impracticable. As you pointed out, this information was available. St. Mary's apparently made the strategic choice not to avail themselves of this information for almost seven years. These regulations came into effect in 2005 that would have subject and did subject their plant to the BART requirements. And in 2005, they didn't think it was either appropriate or necessary to look into this information. That strategic call on their part to try and exempt themselves from the regulation rather than comply with it under the BART standards does not make it impracticable for them to have raised the argument earlier. So, yes, this court reviews EPA's denial of the petition for reconsideration. Our first argument in denying that petition for reconsideration was they don't meet the threshold. The evidence that they are now putting forward, they could have put forward during the rulemaking. Therefore, they are not entitled to reconsider. Yes, Mr. Dindover's point seems to be, well, that St. Mary's had no motive or incentive to go back into the history because initially the state of Michigan said, hey, even if you're BART eligible, you're complying, so you don't have to do anything. So it wasn't going to be any adverse consequence until the EPA overruled the state of Michigan, right? Then they started, uh-oh, we've got to find another reason, and that's when they dug into their history. That is the way they have presented it, Your Honor. EPA gave St. Mary's notice almost a year before the rule issued that EPA disagreed with the state of Michigan's approach in determining what was BART technology here. So St. Mary's, at the end of December of 2011, and certainly by the spring and by May of 2012, was on notice that EPA was disagreeing with the state of Michigan. In fact, EPA provided its comments to the state of Michigan, also to St. Mary's, so that St. Mary's would know that EPA was in disagreement. St. Mary's had months after EPA gave notice that it was likely to follow a different path to undertake whatever research it needed. In this case, it was simply submitting a request to the state of Michigan for the documents that the state of Michigan had, and the record doesn't indicate how long that took, but apparently it didn't take that long for the state of Michigan to find the relevant documents that are now part of the record. And when was the public comment period? The public comment period was from August 5, 2012 to September 5, 2012. And the EPA gave them notice back in what you're saying December of the year before that they were disagreeing? EPA took that position in December of the year before and provided written comments in the spring and in May of 2012 of their position that they disagreed. Okay, and the first time it was brought up to the EPA by St. Mary's that, hey, we're not subject to BART at all was not until when? October, Your Honor. October, November of 2012. In a meeting, and the documents which they now rely upon were not provided to EPA until November of 2012. So, well after the comment period, and from our point of view, not an impracticable thing for them to have done prior. It's essentially a strategic call that... We don't know if it's strategic or, you know, necessities of the motherhood of invention. I wouldn't call that strategy. That's, oh, shoot, we've got to find a way to win. Well, that would be another approach, or another surmise, Your Honor. I agree. Once they found out that their primary approach was not going to work, they looked for a second or a third argument. I did want to return to one of your comments relating to the D.C. Circuit cases, and that related to my opposing counsel's comment about statutory authority being an exemption to the waiver. If we're looking at statutory authority, Your Honor, in this case the statute says, if your plant was built or constructed after 62 and in existence in 77, you are BART eligible. There's nothing in the statute that says anything about an exemption for reconstruction. So under the statute, St. Mary's Cement Plant is BART eligible, and EPA has authority to regulate that plant. The only reason we're having this discussion about reconstruction is because of sentences and guidance that in certain circumstances rise to the level of regulations. But there's nothing in the statute that deprives EPA of authority to regulate this plant. In fact, under statutory authority, there's no question the plant is regulated under the regional Hays rules. There's one really technical question I'm not quite sure I understand. So there's this dichotomy in administrative law between rulemaking and adjudication, and this for some reason seems funny to me to call rulemaking, which is what you call this. So even though the rulemaking really just applies to one plant, you call it rulemaking, even though it seems a lot like an adjudication. What am I missing? It's rulemaking under the Clean Air Act and the analogous APA provisions because there's no what's legally called hearing on the record. There's no evidentiary hearing in which you call witnesses. It matters not whether it's something the EPA is doing for lots of plants versus one plant. It's a question of whether there's a hearing. Well, a hearing on the record is the magic language. But yes, essentially it's an evidentiary hearing in which you present evidence, call witnesses. Under certain sections of environmental statutes, a party is entitled to an evidentiary hearing. And everything else is rulemaking. And virtually everything else, certainly this particular proceeding, is rulemaking. EPA is reviewing a state submission, which it does on the record that the state submits plus any comments that are submitted during the comment period. And that is done under a rulemaking rubric. And so it's called a rulemaking, Your Honor. I would like to briefly touch on a couple of the other arguments that petitioners raise unless there's further questions on the waiver issue. My opposing counsel tries to place the burden on EPA to establish that it is entitled to regulate this particular facility. And I think they've got the burden of proof in the wrong place, Your Honor. We, EPA, certainly does have to come forward and establish a basis to regulate this plant. And EPA did this on this case based upon the fact that the plant was constructed in existence during this 15-year window established by the statute. St. Mary's Cement is trying to avail itself of a regulatory exemption to that statutory standard. And in the context of availing yourself of a regulatory exemption, it's sort of analogous to an affirmative defense. EPA comes forward, presents and establishes its prima facie case. You are subject to regulation under the statute. If the plant wants to come in and say, no, we're exempted for a particular reason, they have the burden to establish the facts that would establish the particular exemption. Here they did not do that, Your Honor. The record they present does not establish, and they do not meet, their burden of proof of establishing that a reconstruction occurred in 1978 or 1979. And EPA cited and identified four factors that undercut St. Mary's attempt to avail itself of the reconstruction exemption. First and probably most important, the owner of the plant at the time, Medusa, came into the state and said, we are not a reconstruction. Our costs do not meet the 50% threshold, so don't consider ourselves a reconstruction. This is the owner of the plant at the time in 1977 saying, we don't meet the reconstruction threshold. That in itself should be sufficient for EPA to have reasonably determined that St. Mary's hadn't met its burden of establishing a reconstruction. In addition, reconstruction was not mentioned, and I realize I don't have time for the other two. I urge the court to deny the petition for review. Thank you, Your Honor. Thank you. Any rebuttal? Thank you, Your Honor. I think first on the waiver issue, the government wishes to avoid also the newly acquired evidence problem that it faces. The state of Michigan reviewed the materials once St. Mary's had gone through it and went back and reviewed its own files and came to EPA and said, hey, we made a mistake. This plant is not BART eligible. We've looked at our records now. That in and of itself is newly acquired evidence that the government, that the EPA should have taken into account but did not. That last thing, that happens during the reconsideration period? It could happen, yes, Your Honor. Or it occurs after it, during or after it? It was provided to the government before the final rule was published in the Federal Register and before we, you know, and then we filed our petition for reconsideration after that. So it was part of our petition for reconsideration as well. Also, the four factors that counsel mentioned. Is the state of Michigan subject to the same impracticability standard that you are? Your Honor, I don't know. I simply say to myself, at some point, fundamental fairness has to say, if the agency relied upon, if the EPA relied upon the state of Michigan who determined initially that this plant should be BART eligible, and then that entity comes back to EPA and says, you know, we concluded that this was BART eligible, but we're wrong. At that point, it puts a burden on EPA to go back and look at the record and make an actual determination using all the factors that should have been used from the beginning. Suppose there's some kind of res judicata or collateral estoppel bar till you're starting a whole new proceeding tomorrow? I mean, that makes sense, because otherwise these forfeiture rules wouldn't mean much, but I just don't know how that works. I don't know either, Your Honor. I think that at some point, again, fundamental fairness demands that the agency, on the one hand, relying on Michigan having made an initial determination, but when Michigan says we made a mistake, that they ought to, from a fundamental fairness point of view, look at that information. Michigan only starts saying we made a mistake after St. Mary's decided they made a mistake. Well, that's correct. That's when we provided the information to the state, and the state then... Got it from the state in the first place. I'm sorry? Got the information from the state. We did. The state had not looked at its information. That's the problem. And counsel refers to this plant as having been built in that period of time. What counsel does not say, though, is that that plant that existed at that time was torn down. Major parts of it were used again in the new reconstruction. But in 1978, this big cement kiln was replaced by a revised system. So thank you, Your Honor. Thank you. Case is submitted, and when you're ready, you can call the next case.